FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

<table>
<tr><td>UNITED STATES OF AMERICA,<br><i>Plaintiff-Appellee</i>,<br><br>v.<br><br>ALFRED NASH VILLALOBOS,<br><i>Defendant-Appellant</i>.</td><td>No. 12-50300<br><br>D.C. No.<br>2:09-cr-00824-GHK-1<br><br><br>OPINION</td></tr>
</table>

Appeal from the United States District Court
for the Central District of California
George H. King, Chief District Judge, Presiding

Argued and Submitted
January 7, 2014—Pasadena, California

Filed April 11, 2014

Before: William A. Fletcher, Milan D. Smith, Jr., and
Paul J. Watford, Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.;
Concurrence by Judge Watford

## SUMMARY[*]

### Criminal Law

The panel affirmed a lawyer's conviction for attempted extortion.

The panel held that the district court's jury instruction – that threats to testify or provide information are "wrongful" under the Hobbs Act if made with the intent to induce or take advantage of fear – was erroneous because it would necessarily lead a jury to conclude that all threats are wrongful. The panel concluded, however, that the error was harmless because any rational jury would have found the defendant guilty, absent the erroneous instruction, since the "means" the defendant employed to obtain property – threats to have his client cooperate with, or alternatively, impede an ongoing criminal investigation into the Director of the Los Angeles Chabad Israel Center's visa-procurement scheme, contingent on payment – were unlawful and therefore clearly wrongful under the circumstances.

The panel held that the district court did not err by not providing a claim of right instruction. The panel explained that even if available, a claim of right defense would do nothing to shield the defendant from conviction of attempted extortion.

Concurring in the judgment, Judge Watford would affirm the conviction for different reasons. He wrote that the

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

defendant could not assert a claim-of-right defense, where there was no arguable nexus between the subject of the threat and a legitimate claim to the property demanded. He therefore found no error in the jury instructions which were, he wrote, an accurate statement of the law as applied to the facts of this case in which no such nexus existed.

## COUNSEL

Rebecca P. Jones (argued), San Diego, California, for Defendant-Appellant.

Mark R. Yohalem (argued), Assistant United States Attorney, Los Angeles, California, for Plaintiff-Appellee.

## OPINION

M. SMITH, Circuit Judge:

Defendant-Appellant Alfred Nash Villalobos appeals from his conviction for attempted extortion, in violation of 18 U.S.C. § 1951(a), and endeavoring to obstruct justice, in violation of 18 U.S.C. § 1503(a). Villalobos claims that the district court erred in instructing the jury that all threats to testify or provide information are "wrongful" under the Hobbs Act if made with the intent to induce or take advantage of fear, and in precluding a claim of right defense to the attempted extortion charge. We hold that even though the district court's jury instruction was erroneous, that error was

harmless. We also hold that the district court did not err in precluding Villalobos's claim of right defense. We affirm.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

This appeal arises out of the government's investigation of Rabbi Amitai Yemeni (Rabbi Yemeni), the director of the Los Angeles Chabad Israel Center (Center), because of his efforts to help Israeli nationals obtain visas to come to the United States under the pretext that they were religious workers at the Center. Pursuant to Rabbi Yemeni's scheme, such individuals would not work at the Center, but would be paid as if they were. They would then return to Rabbi Yemeni the money paid to them by the Center.

Orit Anjel (Orit) came to the United States, allegedly as a religious worker at the Center. Orit was accompanied by her husband Avraham Anjel (Avi). Orit purportedly worked at the Center, and Avi received her paychecks. Avi regularly cashed the checks at a bank, and, in turn, gave the money to Rabbi Yemeni. In 2009, Orit received a letter from Rabbi Yemeni terminating her work at the Center.

When Orit was terminated, Avi engaged Villalobos, a lawyer, to help him recoup the money he had paid to Rabbi Yemeni. Through his discussions with Avi, Villalobos learned that the government wanted to interview Orit as part

---

[1] Villalobos also alleges the following errors by the district court: (1) the sufficiency of the evidence that Villalobos endeavored to obstruct justice; (2) the admission into evidence of two of Villalobos's statements; (3) Agent Gary Bennett's and Benjamin Gluck's testimony concerning Villalobos's statements; and (4) the sentencing enhancement for abuse of a position of trust. We address these claims in a memorandum disposition filed contemporaneously with this opinion, and we affirm.

of its investigation into Rabbi Yemeni's scheme. Villalobos then approached Rabbi Yemeni, and later Rabbi Yemeni's lawyer, Benjamin Gluck (Gluck), and demanded payment. Villalobos contends that he was merely helping the Anjels recover back wages for Orit's work at the Center that Rabbi Yemeni had improperly required them to remit to him. The government, on the other hand, contends that Villalobos was attempting to extort Rabbi Yemeni, and that in return for payment, Villalobos promised that Orit would do "whatever it is we need her to do," including impeding the investigation, lying to investigating Assistant U.S. Attorney Keri Axel (Axel), and repeating those lies to the grand jury.

Gluck informed Axel about Villalobos's demands for payment, and agreed to record his subsequent communications with Villalobos. FBI Special Agent Gary Bennett was assigned to supervise Gluck's communications with Villalobos. Gluck recorded his conversations with Villalobos, both in person and over the phone, in which they discussed various aspects of the plan to pay Villalobos in return for Orit's favorable testimony during the investigation.

Villalobos was arrested after Gluck gave him a cash payment, shortly before Orit's scheduled meeting with Axel. Villalobos was charged with one count of attempted extortion, 18 U.S.C. § 1951(a), and one count of endeavoring to obstruct justice, 18 U.S.C. § 1503(a). After a five day trial, the jury returned a guilty verdict on both counts, and the district court entered judgment. Villalobos timely appealed.

## DISCUSSION

Extortion is defined in the Hobbs Act as "the obtaining of property from another, with his consent, induced by *wrongful*

use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2) (emphasis added).

Villalobos contends that the district court erred when it instructed the jury that all threats to testify or provide information are "wrongful" under the Hobbs Act if made with the intent to induce or take advantage of fear. Closely related to his initial contention, Villalobos also argues that the district court erred when it precluded him from presenting a claim of right defense to the extortion charge. More specifically, Villalobos contends that he had a lawful claim to the property he demanded on behalf of Orit, and that as such his actions were not "wrongful" in the sense required by the Hobbs Act.

In *United States v. Enmons*, 410 U.S. 396 (1973), the Supreme Court concluded that the use of force to achieve legitimate labor ends was not extortion. The Court interpreted the word "wrongful" in the Hobbs Act to "limit[] the statute's coverage to those instances where the obtaining of the property would itself be 'wrongful' because the alleged extortionist has no lawful claim to that property." *Id.* at 400. It reasoned that "[t]he term 'wrongful,' which on the face of the statute modifies the use of each of the enumerated means of obtaining property—actual or threatened force, violence, or fear—would be superfluous if it only served to describe the means used. For it would be redundant to speak of 'wrongful violence' or 'wrongful force' since . . . any violence or force to obtain property is 'wrongful.'" *Id.* at 399–400 (footnote omitted). The Court thus held that violence in the labor context is not wrongful for purposes of extortion if the

defendant has a lawful claim to the property, *see id.* at 400, or a "claim of right."[2]

In *United States v. Daane*, 475 F.3d 1114, 1119–20 (9th Cir. 2007), we held that the claim of right defense described in *Enmons* is unavailable in cases involving physical violence outside of the labor context, because such violence is inherently wrongful. We agreed with the reasoning of *United States v. Zappola*, 677 F.2d 264 (2d Cir. 1982), which concluded that "Congress meant to punish as extortion any effort to obtain property *by inherently wrongful means . . .* regardless of the defendant's claim of right to the property." *Daane*, 475 F.3d at 1120 (quoting *Zappola*, 677 F.2d at 268–69 (citations omitted)) (emphasis added). In other words, we recognized in *Daane* that outside the labor context, there are some attempts to obtain property that are so inherently wrongful that whether the defendant had a lawful claim to the property demanded is not relevant in determining whether extortion or attempted extortion has been proven.

In the present case, we consider whether *nonviolent* threats outside the labor context can be "wrongful" under the Hobbs Act. The threats at issue in this case —threats to cooperate with an ongoing criminal investigation—are unlike the threats of force or violence outside the labor context discussed in *Daane*, because the threats at issue here are not inherently wrongful. Indeed, our law encourages individuals to cooperate with ongoing criminal investigations and proceedings.

---

[2] The Supreme Court also relied on the legislative context and history of the Hobbs Act to conclude that the Act does not apply to the use of force to achieve legitimate labor ends. *Enmons*, 410 U.S. at 401–08.

We conclude that where a nonviolent threat to obtain property is not, by its nature, inherently wrongful, a court must first consider whether the threat, as actually used in the case at issue (the "means"), is wrongful, without regard to the property demanded by the defendant (the "ends"). If a nonviolent threat is wrongful under the circumstances, then it is sufficient to sustain a conviction for extortion or attempted extortion. In such situations, a court need not consider whether the defendant has a lawful claim to the property demanded. This approach is consistent with *Daane*, which recognized that certain "means" to obtain property are "wrongful" under the Hobbs Act without regard to the "ends" sought by the defendant. *See Daane*, 475 F.3d at 1119–20. A similar means-ends framework was adopted by the First Circuit in *United States v. Sturm*, 870 F.2d 769 (1st Cir. 1989).[3]

Here, Villalobos's "means" were his threats to have Orit cooperate with the investigation of Rabbi Yemeni, contingent upon payment, and his "ends" were the money, fraudulent tax receipts for donations, and a job or job recommendation for Orit that he demanded from Rabbi Yemeni. Unlike violent threats, threats to cooperate with an ongoing criminal

---

[3] In *Sturm*, the First Circuit recognized that "different considerations" apply in the context of extortion based on threats of force or violence than in the context of threats that are not inherently wrongful, like threats based on economic fear. *Sturm*, 870 F.2d at 772–73. It reasoned that extortion cases based on force or violence generally involve wrongful "means," while extortion cases based on economic fear typically involve only allegations of wrongful "ends" (i.e. the defendant does not have a lawful claim to the property demanded). *Id.* at 773. It concluded that in such situations, the use of legitimate economic threats (the "means") to obtain property is wrongful only if the defendant has no claim of right to the property demanded (the "ends"). *Id.*

investigation are clearly not wrongful per se under the Hobbs Act.  However, if Villalobos's threats were wrongful under the circumstances, they are sufficient to sustain a conviction for attempted extortion, without regard to the "ends" Villalobos sought.

The district court instructed the jury that a threat of testifying or providing information was "wrongful" under the Hobbs Act "if it [wa]s made with the intent to induce or take advantage of fear . . . ."  But by their nature, threats are intended to induce or take advantage of fear.  Accordingly, an instruction that threats are wrongful if intended to induce or take advantage of fear would necessarily lead a jury to conclude that all threats are wrongful.  The district court's instruction was thus erroneous because it essentially read the "wrongful" element out of the Hobbs Act.

Since the district court's instruction was erroneous, we must consider whether the district court's error was "harmless beyond a reasonable doubt."  *United States v. Awad*, 551 F.3d 930, 938 (9th Cir. 2009) ("If a jury instruction misstates an element of a statutory crime, the error is harmless if it is 'clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.'" (quoting *Neder v. United States*, 527 U.S. 1, 18 (1999)); *see also Neder*, 527 U.S. at 8–10 (holding that district court's erroneous jury instruction was subject to harmless error review).

To determine whether the district court's error was harmless, we first evaluate whether Villalobos's threats to cooperate with the ongoing investigation were wrongful.  The evidence is clear beyond a reasonable doubt that any rational jury would have found Villalobos guilty absent the erroneous

jury instruction because Villalobos's "means" to obtain the property—his threats to have his client Orit cooperate with, or alternatively, impede, the ongoing investigation, contingent upon payment—were unlawful, and therefore clearly wrongful under the circumstances.  The evidence overwhelmingly shows that Villalobos threatened to have Orit change the story she would provide to the investigating authorities, depending on whether Rabbi Yemeni paid him. For example, Villalobos repeatedly promised to influence Orit to have her "shade[]" things as necessary and to "do whatever it is [they] need her to do" during her interview with Axel if Rabbi Yemeni paid him.  Villalobos made clear through his conversations with Gluck that what Orit would tell government agents and the grand jury depended on whether Rabbi Yemeni acceded to his demands.

As evidence of the unlawfulness of Villalobos's conduct, the jury necessarily found that Villalobos's conduct was unlawful when it found him guilty of endeavoring to obstruct justice by instructing Orit to make false and misleading statements to the investigators in exchange for payment.  The district court instructed the jury that in order to prove obstruction of justice, the government had to prove beyond a reasonable doubt that Villalobos sought payment and other compensation "from the target of a pending federal grand jury investigation in exchange for an agreement that [Villalobos] would cause his client, Orit . . . , to make false and misleading statements to [Axel] or the grand jury conducting that investigation . . . ."  Because the record makes clear beyond a reasonable doubt that any rational jury would have found that Villalobos's threats were wrongful because they were unlawful, his threats were sufficient to sustain a conviction for attempted extortion.  *See Awad*, 551 F.3d at 938.

In light of the above, although the district court's jury instruction on wrongfulness was erroneous, that error was harmless. Because Villalobos's threats were wrongful under the Hobbs Act, we need not reach the question whether a claim of right defense is available in this context. Even if available, such a claim would do nothing to shield Villalobos from conviction of attempted extortion. The district court did not err by not providing a claim of right instruction.

**AFFIRMED.**

WATFORD, Circuit Judge, concurring in the judgment:

I agree with the majority that Mr. Villalobos' extortion conviction should be affirmed, but I reach that conclusion for somewhat different reasons.

Like the district court, I see no need to decide whether threats to provide truthful testimony in an ongoing criminal investigation are always "inherently wrongful," thereby precluding assertion of a claim-of-right defense.[1] Even if such threats are not inherently wrongful, the district court correctly concluded that Villalobos could not assert a claim-of-right defense in this case. A defendant is entitled to raise that defense only when, among other things, there's some basis in the record for finding a nexus between the subject of

---

[1] Villalobos' wrongdoing also involved offering to have Orit Anjel provide *untruthful* testimony *favorable* to Rabbi Yemeni in return for the payment demanded, but that conduct didn't involve a threat and therefore can't be characterized as extortion. It was instead properly charged as an attempt to obstruct justice.

the allegedly extortionate threat and a legitimate claim to the property demanded. *See United States v. Jackson*, 180 F.3d 55, 70–71 (2d Cir. 1999); *United States v. Tobin*, 155 F.3d 636, 640 (3d Cir. 1998).

No such nexus even arguably exists here. Even if Anjel really was owed $120,000 in back wages, as Villalobos claimed, she was not threatening to provide truthful testimony in an ongoing criminal investigation about Rabbi Yemeni's supposed wage-and-hour violations. In that scenario, at least, Anjel would have been a victim of the offense, and payment of the money demanded could be viewed as "'reasonable action to make good the wrong which was the subject of the threatened charge.'" Appellant's Opening Brief 32 (quoting 11 Del. Code Ann. tit. 11, § 847(b)). The criminal investigation related to Rabbi Yemeni's alleged acts of *immigration fraud*, and far from being a victim of that offense, Anjel was herself both a participant in and a beneficiary of it. On these facts, "the evidence precluded the [claim-of-right] instruction as a matter of law." *Tobin*, 155 F.3d at 641.

I therefore find no error in the district court's instructions to the jury. The instructions stated, in essence: (1) a threat to provide testimony is wrongful if it's made "with the intent to induce or take advantage of fear" that the victim will be subjected to criminal investigation, prosecution, or punishment; and (2) if Villalobos made such a threat, it was still wrongful even if he had a claim of right to the property he demanded. As applied to the facts of this case, in which no nexus existed between the threat and the property demanded, that was an accurate statement of the law. Villalobos has offered us no basis for holding otherwise.